UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL GARCIA, <br><br>           Plaintiff, <br><br>     v. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br><br>           Defendant. | Case No.: 1:14-cv-1744-JLT <br><br> ORDER REMANDING THE ACTION AND DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF MANUEL GARCIA AND AGAINST DEFENDANT CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY |

Manuel Garcia asserts he is entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the denial of his applications for benefits. The Commissioner of Social Security agrees that Plaintiff was disabled under the Medical-Vocational Rule 202.02 when he changed age categories and seeks a remand "for the agency to issue a partially favorable decision finding Plaintiff disabled as of January 19, 2012." (Doc. 24 at 5) Accordingly, the period in issue for Plaintiff's benefits

Because the ALJ failed to support the findings that Plaintiff is able to write in English with substantial evidence in the record, the matter is remanded for further proceedings related to Plaintiff's disability prior to January 19, 2012, pursuant to sentence four of 42 U.S.C. § 405(g). In addition, the matter is remanded for payment of benefits for disability beginning January 19, 2012.

///

**BACKGROUND**

In his applications for benefits, Plaintiff alleged disability beginning June 17, 2008. (Doc. 16-3 at 15) The Social Security Administration denied Plaintiff's applications at the initial level and upon reconsideration. (*Id.*) After requesting a hearing, Plaintiff testified before an ALJ. (*Id.*) The ALJ concluded Plaintiff was not disabled and issued an order denying benefits on May 25, 2011. (*Id.* at 15-23) The Appeals Council denied Plaintiff's request for review on September 23, 2011. (*Id.* at 2-4)

Plaintiff filed a second set of applications in October 2011. (Doc. 16-11 at 98) In addition, he filed a request for judicial review of the ALJ's decision, thereby initiating Case No. 1:11-cv-1965-SKO before this Court. (*See* Doc. 16-11 at 77) The Court determined, "The ALJ's decision made no finding that Plaintiff was literate, and failed to provide any explanation of the finding that Plaintiff had a limited education and could communicate in English." (*Id.* at 86) Therefore, the matter was remanded for further proceedings on January 30, 2013. (*Id.* at 88)

The Appeals Council noted that while the Court was reviewing the ALJ's decision, "[t]he California Disability Determination Service (DDS) issued a favorable determination on December 12, 2012, finding the claimant disabled commencing April 1, 2012." (Doc. 16-11 at 98) The Appeals Council explained: "The DDS found the claimant retained a residual functional capacity the same as that found by the Administrative Law Judge in the prior application. However, the DDS found that due to a change in age category, the claimant is now disabled under Medical-Vocational Rule 202.02." (*Id.*) Finding the decision was "supported by the substantial medical evidence of record," the Appeals Council "affirm[ed] the State Agency's determination that the claimant is disabled commencing April 1, 2012." (*Id.*) However, in accordance with the Court's order, "the period prior to April 1, 2012, require[d] further administrative proceedings." (*Id.*) Therefore, the Appeals Council vacated the ALJ's decision. (*Id.*)

Plaintiff testified with the assistance of an interpreter at a second hearing on May 5, 2014. (Doc. 16-18 at 8) The ALJ noted "[t]he sole issue" for him to determine was "whether the claimant is literate and able to communicate in English." (*Id.*) The ALJ found Plaintiff was able to read, write, speak, and understand English." (*Id.* at 9-10) Therefore, the ALJ concluded Plaintiff "possesse[d] a sufficient English vocabulary to perform unskilled work." (*Id.* at 11)

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

The Commissioner established a sequential five-step process for evaluating a claimant's

alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

Previously, pursuant to this five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of June 17, 2008. (Doc. 16-3 at 17) At step two, the ALJ found Plaintiff's severe impairments included: "aortic valve stenosis, status-post aortic valve replacement, hypertension and anticoagulation therapy." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 18) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally or 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday (20 CFR 404.1567(b) and 416.967(b)). He may not climb ladders, ropes or scaffolds, or work at unprotected heights or around sharp objects.

(*Id.* at 19) In addition, the ALJ opined Plaintiff "ha[d] a limited education was is able to communicate in English." (*Id.* at 21) Based upon this RFC, the ALJ determined Plaintiff was "unable to perform any past relevant work." (*Id.*) However, the ALJ found there were "jobs that exist in significant numbers in the national economy" that Plaintiff could perform. (*Id.* at 22) Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

The findings related to Plaintiff's physical limitations, and his residual functional capacity, were not challenged. Therefore, upon remand, the ALJ adopted the prior findings and addressed only the issue of Plaintiff's literacy and whether he was able to communicate in English.

## A.   Relevant Medical Evidence

On June 13, 2008, Plaintiff was admitted to Bakersfield Heart Hospital for "[p]ossible unstable angina." (Doc. 16-8 at 4) The Patient Admission Database indicated Plaintiff spoke Spanish and English and did not need an interpreter. (*Id.* at 50) Upon discharge, Plaintiff's daughter received a copy

of the "Angiography Discharge Instructions" in English, while Plaintiff signed the Spanish-language version. (*Id.* at 44-45)

Dr. Sarabjit Purewal reported that Plaintiff was admitted to Bakersfield Memorial Hospital in March 2009 for an aortic valve replacement and described Plaintiff as a "52-year-old Hispanic gentleman who speaks little English." (Doc. 16-8 at 64)

Dr. Gil Schmidt performed a consultative psychological examination in October 2012. (Doc. 16-15 at 59) Dr. Schmidt described Plaintiff as a "Hispanic, English-speaking male." (*Id.*) Plaintiff told Dr. Schmidt that he "never moved beyond the fifth grade in formal education," and that he attended school in Mexico. (*Id.* at 60) Plaintiff said he "reads and writes in Spanish fluently" and "can read a little bit in English." (*Id.*)

**B.    Administrative Forms**

1.    Disability Reports

An unsigned Adult Disability Report from October 2009[1] indicates Plaintiff could not speak and understand English, and that his preferred language was Spanish. (Doc. 16-7 at 6-13) The report also states that Plaintiff could read, understand, and "write more than [his] name in English. (*Id.* at 6) Plaintiff wrote or completed reports in his job as a mechanic but the language of those reports is not indicated. (*Id.* at 8) Further, the report indicates that Plaintiff has a 10th-grade education. (*Id.* at 12)

In an Adult Disability Report submitted in November 2011, Plaintiff indicated he could *not* speak, read and understand, or "write more than [his] name in English." (Doc. 16-14 at 9) He again indicated his preferred language was Spanish. (*Id.*)

2.    Adult Function Reports

An unsigned and undated[2] Adult Function Report states that Plaintiff can follow written and spoken instructions "well," but makes no indication as to what language instructions must be made in for Plaintiff. (Doc. 16-7 at 14) A second Adult Function Report completed in December 2011 indicates the name of the person completing the form was "Manuel Garcia," and was written in the first person, in English. (Doc. 16-14 at 30-37)

---

[1] The section indicating "[n]ame of person completing this form" was not completed. (*See* Doc. 16-7 at 13)
[2] The sections indicating "[n]ame of person completing this form" and date on the final page were not completed. (*See* Doc. 16-7 at 21)

### 3.      Medical/Vocational Analysis

A Medical/Vocational analysis prepared by the Commissioner in December 2009 indicates that Plaintiff cannot read, write, or communicate in English.  (Doc. 16-7 at 22)  It does not indicate Plaintiff is illiterate. (*Id.*)

### 4.      Work History Report

In December 2011, Plaintiff submitted a work history report written in English.  (Doc. 16-14 at 26-29)  The box entitled "Name of person completing this form" indicates it was completed by "Manuel Garcia." (*Id.* at 29)  The form required the person completing it to describe his job duties, and explain the lifting and carrying requirements.  (*Id.* at 27)

## C.     Plaintiff's Testimony

### 1.      Initial Hearing

At the hearing held in 2011, Plaintiff testified with the assistance of an interpreter.  (*See* Doc. 16-3 at 30)  When Plaintiff was asked if he had a 10th grade education, he replied that he was "not sure if that's exactly correct." (*Id.* at 34)  He said he "studied up to the 6th grade in Mexico, and then [he] studied some classes here for English." (*Id.*)  Plaintiff stated that he understood "[a] little bit" of English," but "always had problems or issues with the English."  (*Id.* at 35, 38)  For example, he explained he was not able to order parts while working as a mechanic because he "wasn't capable with [his] English" and "wouldn't be able to do it." (*Id.* at 48)

### 2.      Hearing after remand

Plaintiff again testified with the assistance of an interpreter at a hearing in May 2014.  (Doc. 16-10 at 27, 33)  He testified that he obtained a sixth-grade education in Mexico, and "attended a school in California around two to three months." (*Id.* at 33)  Plaintiff reported he became an American citizen around 2000, or "about 14 years" before the hearing.  (*Id.* at 34)  He said when he took the immigration test, it was in English and he was asked "about six questions." (*Id.* at 34-35)  Plaintiff stated the questions were asked in English and he "was able to answer them" in English, though it was difficult. (*Id.* at 35)  Plaintiff reported he "went to 40 hours of schooling for the citizenship," and "studied …in Spanish, but then [he] started memorizing…in English." (*Id.*)

He again reported that while as a mechanic, he did not order parts because he did "not have

1  enough English." (Doc. 16-10 at 37) In addition, Plaintiff said that when he was learning his work as
2  a mechanic, he was taught in Spanish. (*Id.*) He reported that he learned to the information conveyed
3  to him while working as a mechanic at a bowling alley by memorizing "all the names of the
4  problems." (*Id.* at 38) He said he "[a]lmost never" had to talk to customers, and was not able to do so
5  in English. (*Id.*) Similarly, Plaintiff reported that when he received training to work as a forklift
6  driver in a prior job, he learned in Spanish because "there was a person there that spoke Spanish and
7  he was translating." (*Id.* at 41)

8        Plaintiff testified when he was examined by Dr. Schmidt, he communicated in English. (Doc.
9  16-10 at 42) He acknowledged that he was able to respond to the questions regarding how long he
10 was married, how many children he had, describe his medical history and problems, and name his
11 medications. (*Id.* at 42-44)

12       At the hearing, the ALJ informed Plaintiff's counsel "what I find is that he can speak English
13 okay and understand English, but I don't think he could probably write or read English." (Doc. 16-10
14 at 48) In addition, the ALJ observed that he believed the disability form "was filled out for [Plaintiff]
15 that indicate[d] that [he] can read and write more than [his] name in English." (*Id.* at 52) In response,
16 Plaintiff said he could read more than his name in English. (*Id.*) The ALJ asked Plaintiff to read a
17 portion of the hearing notice, which he did with few errors. (*Id.* at 54) However, Plaintiff said he did
18 not understand all the words. (*Id.*) In addition, Plaintiff believed he was not able to write a short note
19 to someone in English, such as indicating he "would be right back in 30 minutes." (*Id.*)

## DISCUSSION AND ANALYSIS

21 **A.    Illiteracy**

22       As explained by the regulations, "Because English is the dominant language of the country, it
23 may be difficult for someone who doesn't speak and understand English to do a job, regardless of the
24 amount of education the person may have in another language." 20 C.F.R.  404.1564(b)(5),
25 416.964(b)(5). Consequently, whether a person is illiterate is generally a relevant vocational factor.
26       Illiteracy is defined as "the inability to read *or* write." 20 C.F.R. §§ 404.1564(b)(1),
27 416.964(b)(1) (emphasis added). The regulations provide that the Social Security Administration
28 "consider[s] someone illiterate if the person cannot read or write a simple message such as instructions

or inventory lists even though the person can sign his or her name." *Id.* Plaintiff acknowledges that "[t]he finding of the ability to speak English and to read English has the support of substantial evidence." (Doc. 23 at 10) However, Plaintiff argues that "[t]he ALJ exercised speculation and assumption to reach the conclusion" that Plaintiff is able to write in English. (*Id.* at 11) Consequently, Plaintiff contends the ALJ erred in finding he is not illiterate.

In support of the conclusion that Plaintiff "is able to write in English," the ALJ indicated his "finding [was] supported by the …Function and Work History Reports that carry the claimant's name as the individual who completed the forms." (Doc. 16-18 at 10) The ALJ observed that the reports were "reasonably well crafted, outside of a few grammatical and minor spelling errors." (*Id.*) The ALJ then noted, "Assuming it is the claimant who filled them out, he is certainly capable [of] writing in English." (*Id.*) Further, the ALJ stated:

> When questioned directly about this at the hearing, claimant stated he could not write a simple note in English. In contrast to this assertion, however, I asked him through the interpreter if he was able to read and write more than his name in English (as reported from the claimant's statement cited in Judge Oberto's Order, Exhibit 14A at page 11), he replied that this was correct and that he could. Now 57, he also testified that he came to America when he was 17 (about 1974), attended school here for 2-3 months before he stopped due to a work conflict, and became an American citizen in 2000, and that he attended classes for 40 hours to prepare for the citizenship examination, which he confirmed was conducted in English. Based upon his living and working here for about 40 years, attending school and citizenship class study and his prior testimony and written statements, I find it more persuasive that claimant does have the ability to write at least "a simple message in English" than his denial at the hearing that he has that ability. On the subject of the credibility on this issue, I also note the psychiatric evaluation by Dr. Schmidt, conducted on October 15, 2012 (Exhibit 20F). As noted below, Dr. Schmidt conducted the entire psychiatric evaluation in English without an interpreter; further, he observed that claimant appeared to be "heavily invested in his medical condition," providing a factor which may have lead claimant to attempt to minimize his English language literacy and communication ability in order to obtain the financial benefits sought here.

(Doc. 16-18 at 10)

Significantly, however, many of the factors considered by the ALJ in support of his finding that Plaintiff can *write* in English address his ability to *speak* or *read* in English. For example, the ALJ mischaracterizes Plaintiff's testimony at the hearing, because when the ALJ asked if Plaintiff could read and write more than his name, Plaintiff answered in the affirmative—but only addressed his ability to read in stating: "To read is very little that I can do besides my name, but I can a little bit." (Doc. 16 at 52) Plaintiff told the ALJ he could not complete inventory forms while working as a mechanic, and

could not write "a note to someone who didn't read Spanish that [he] would be right back in 30 minutes." (*See id.* at 37, 53-54)

      While the ALJ relies in part upon the observations of Dr. Schmidt that Plaintiff spoke English at the examination, there is no indication that the questions posed by Dr. Schmidt required Plaintiff to answer in writing. Rather, Plaintiff was candid about his ability to speak and understand some English, both at work and when responding to Dr. Schmidt's questions. However, Plaintiff's ability to *converse* in English does not support the determination that Plaintiff is able to *write* in English.

      Furthermore, Plaintiff's ability to complete the citizenship examination does not support the conclusion that he is literate as contemplated by the regulations. "Although the successful completion of a citizenship test is some evidence of English fluency, it does not constitute substantial evidence to support of finding of fluency or, as it relates to this case, to a finding that Plaintiff has the language skills to meet the demands of … [a] position." *Velasquez v. Colvin*, 2016 U.S. Dist. LEXIS 114221 at *13-14 (C.D. Cal. Aug. 25, 2016) citing, e.g., *Voong v. Astrue*, 641 F. Supp.2d 996, 1009-1010 (E.D. Cal. 2009) (finding that, while "plaintiff passed the citizenship test and obtained a driver's license [this] did not mean that she could speak and read English, even at language level 1," as defined in the *Dictionary of Occupational Titles*); *Altamirano v. Colvin*, 2013 U.S. Dist. LEXIS 103891, at *14-15 (C.D. Cal. July 24, 2013).

      Finally, the ALJ fails to cite any evidence to support his assumption that Plaintiff completed the "Function and Work History Reports" to which he cites as evidence that Plaintiff is able to write in English. As Plaintiff observes, he was not asked at the hearing whether he completed the forms of if someone did it for him. (Doc. 23 at 10-11) To the contrary, at the hearing the ALJ asked Plaintiff, "Sir, there is one of the reports that, **that I think was filled out for you** that indicates that you can read and write more than your name in English. Is that accurate?"[3] (Doc. 16-10 at 52, emphasis added) Consequently, the completed forms—without evidence that Plaintiff, in fact, completed them—does not support the ALJ's conclusion that Plaintiff is able to write in English.

///

---

[3] Plaintiff responded, "To read is very little that I can do besides my name, but I can a little bit." *Id*.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record was fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify substantial evidence in the record to support the conclusion that Plaintiff is able to write in English, and therefore, is not illiterate as defined by the Regulations. However, based upon the record, the Court is unable to determine the scope of Plaintiff's writing abilities. It remains unclear whether Plaintiff is able to "write a simple message such as instructions or inventory lists" such that he has the minimum language levels contemplated by the Regulations and to work in vocations identified in the *Dictionary of Occupational Titles*. Consequently, the matter should be remanded for the ALJ to determine the extent of Plaintiff's ability to write in English, for the period that remains in issue.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ failed to support his decision with substantial evidence in the record. As a result, the administrative decision should not be upheld. *See Sanchez*, 812 F.2d at 510. Because remand is appropriate on this matter, the Court declines to offer any findings on the remaining issue raised in Plaintiff's opening brief related to the mechanical application of the age categories raised in Plaintiff's opening brief.

///

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. The matter is **REMANDED** to the Commissioner of Social Security for the entry of a partially favorable decision and payment of benefits commencing **January 19, 2012**;
2. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision for resolution of the issue of Plaintiff's disability prior to January 19, 2012; and
3. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Manuel Garcia, and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **September 29, 2016**          **/s/ Jennifer L. Thurston**
                                        UNITED STATES MAGISTRATE JUDGE